Good morning, Your Honors. Richard Pearl for the Plaintiff Appellant Harrison Orr. With me at counsel table is Michael Adad, Mr. Orr's trial counsel. I'd like to reserve three minutes for rebuttal. I'm obviously here, we're obviously here to answer any questions the court may have, but I would like to affirmatively address the two most significant points in our brief. First, the trial court, the district court's 45% reduction to counsel's lodestar based on their alleged limited success. As a factual matter, and as it was shown in our brief, the court made a dramatic and inexplicable factual error in assessing plaintiff's success because it assumed in the second fee order that they had not won their false arrest claim, when in fact they did. It also assumed that they had not recovered damages for their false arrest claim when they actually did. So right there, the decision was based on a very important and faulty factual premise and should be reversed. Similarly, the court's decision was based on speculation, and I believe again a misremembrance about what happened, that somehow plaintiff's counsel had not adequately emphasized the damages to Mr. Orr from being detained in jail for 11 hours, when in fact, going back through the closing arguments and testimony, that fact was discussed extensively by Ms. Sherwin in closing. They even showed a video in the closing of Mr. Orr in jail, and so the jury was well aware of that, and presumably, and I think there's no other rational explanation, they did include damages for those for that conduct in their award. So is it your position that the district court should not have made any reduction at all for limited success? I, it's our position that if it did make one, it could have perhaps made the 10 percent haircut that's referred to in the Moreno case, but we think this case achieved excellent results, and that if you apply the proper standards, there were no, the strong presumption that the lodestar is reasonable, and the limitation on limited success reductions to rare and exceptional cases, no, it's our position that there is no, there are no grounds here for a limited success reduction. There are no rare or exceptional circumstances. But when the district court elaborates, well, at summary judgment, certain claims were knocked out. At trial, you didn't prevail against BAME, didn't prevail against the CHP, and you only prevailed against Plum, I guess it is, no, which is, Plum, is that the one? Yes. And you only got $125,000 when you're asking for, I don't know, a significant amount more plus punitives. So what does the district court to do with that? Well, the district court can first assess was any of the time spent on unrelated claims, and it found exactly the opposite, that all the claims were related. And so under the Ibrahim case, it seems to me there should be a presumption that plaintiffs are allowed to bring related claims. That's the nature of lawyering. And if they can't do that, they can't represent their clients adequately. And all the claims on which they lost were related claims. In addition, they took out 338 hours that they had spent exclusively on BAME. And the final point, or one of the final points is that, oh, when you look at what those related claims were, the decision against plaintiffs on Officer Brame, the damages in the case would not have been any different had Officer Brame been found liable for false arrest and excessive force. The damages were what happened to Mr. Orr, and he was compensated for that. So the failure to succeed any significant amount of time. The same goes with the other claims. They all were based on the same injury. And that's the whole purpose of the related claims doctrine. So to come up with a 50 percent reduction or 45 percent reduction in the time counsel spent when the relief would not be greater had those other claims not been made, and in fact, with Officer Brame, almost all the work that was done with Officer Brame would have had to be done anyway with him as a witness, even if he had not been named. How does this rise to the level of abusive discretion, though? The trial court, in a number of ways. Well, first of all, it's an abusive discretion because of the factual error. The 50 percent, 45 percent reduction was based on the notion that Mr. Orr did not recover for false arrest. And in fact, he did. That's the jury's verdict. Yes. And the jury verdict said was affirmative for both excessive force and false arrest. And in fact, throughout the case, Mr. Officer Orr tried to argue that he shouldn't be liable for the false arrest because he was didn't participate in certain parts of it. But that's not the law, as the Court found. He was at the scene when the arrest for resisting arrest occurred, and he's subsequently liable for all the conduct that took place after that, that flowed from that, which includes the time in the jail. Here's a question that's off to one side from what you're arguing, or maybe fundamental as a sort of prerequisite or premise. The memorandum of disposition under which we remanded earlier spoke to attorney's fees, but spoke only to the question as to whether or not the district court erred in relying on Professor Swartz's law review article with respect to award of attorney's fees in light of our telling you you can't consider a lack of deterrence based upon a law review article. The memorandum of disposition didn't talk about anything that you're talking about, although obviously that was then in the case as it is as you want to tell us now. Yes. So why is that open to us now when the previous remand spoke only to the lack of deterrence and the impropriety of relying on Professor Swartz's law review article? Well, first of all, the prior decision was vacated. So there was no prior decision when we went back the second time. No, I'm trying to figure out what effect, if any, our prior memorandum of disposition has. That was not vacated. No. So when it goes back down to the district court, what were we telling the district court that it had to redo? As I read it, if we read it narrowly, the only thing it does is say to the district court, get rid of that lack of deterrence factor, otherwise you're fine because it doesn't say anything about anything else. Well, the trial court did more than that, though. The district court came up with other justifications that had not been before this court in Orr 1, in the first appeal. This whole notion that Mr. Orr would have recovered way higher damages if Brain had been included in the verdict was not part of it. I see the argument. Okay. I get it. And the whole notion, again, that a false arrest, that was part of Orr 1, that there was a false arrest, and the trial judge changed that. He came up with a different fact. And so — I get the argument as to why we're not limited to that point. Right. Okay. The other point I'd like to make is that the whole notion of limited success, the whole notion that courts have unlimited discretion once a plaintiff has not recovered everything they sought or a defendant has been dismissed, has unlimited discretion to reduce the load start by any amount they think is appropriate, is very troubling and has been a serious problem, particularly in the Eastern District. Most courts do not give credence to the notion that there is a strong presumption that the load star is reasonable, and the Court here did not. Most courts do not feel they have to find rare and exceptional circumstances to make a load star reduction. Most courts ignore the language in Blum, which followed Hensley by a year, and said normally courts should award — the load star should be the reasonable fee, normally. Instead, they have taken this limited success, this totally subjective criteria, and applied it based on some percentage that they believe is appropriate. And in this case, a 50 percent reduction, as we've shown, does not come anywhere close to the prior load star reductions that have been approved by this Court based on limited success. Defendants argue that's not dispositive. I agree. But it seems to show that this — that the — that the district court's use of a 50 or 45 percent reduction here just doesn't follow the standards that have been followed in other courts. Sotomayor, our case law seems to suggest that the district court has to offer an explanation as to how it got to the percentage reduction. Yes. It did offer — it offered an explanation, in this case an invalid one. Right. But the explanation, for example, the whole speculation about what might have happened if Mr. Haddad had argued the case differently, that was something new that came up in the second time around, never — never briefed to the parties, and yet that was a major justification for renewing the limited success reduction. On the other side of the equation, the factors that we think are significant were totally ignored. For example, the Court totally ignored the notion — the fact that the defendants had never offered a single-diamond settlement. They totally ignored the fact that the defendant had told the jury, the defendant's award was $5,000, and yet the jury awarded $125,000. You know, you're down to about three minutes. Do you want to let the other side argue and then save that time for rebuttal? Okay. Can I say one thing about the hourly rates? Sure, sure. And that is that we believe — we submitted a recent decision from this court, Roberts v. City of Honolulu, that involves precisely the facts that occurred here. The district court totally ignored all the evidence we presented, particularly the second time around, and including a case in which the attorney general's office rates were found reasonable in Sacramento at a much higher level than the court awarded here. But it totally ignored all our evidence and relied solely on prior awards. And Roberts says that's an abuse of discretion. Let's hear from the other side, and then you've got some time. Okay. Thank you. May it please the Court, Diana Esquivel on behalf of Officer Plumb. What this fees order comes down to, Your Honors, is substantial recovery versus limited success. And these are factors that are made by the district judge who was in a position to observe the litigation as a whole and determine whether we have a case of truly substantial recovery or of limited success. And even when there is substantial recovery, as the Supreme Court said in Hensley, we still look at whether it was limited compared as to what was being sought. I wanted to just briefly address one issue that opposing counsel raised regarding the factual errors. There were no factual errors in Judge Shub's analysis as to why he found that this is a limited success case. He keeps referring to that. Judge Shub says that there was no recovery on the false arrest claim. That is a misrepresentation of the record. There were four false arrest claims presented to the jury during trial. False arrest against Officer Bain and Officer Plumb arising from the initial stop and arrest for driving under the influence. And then there were the other two false arrest claims for resisting an officer initiating an arrest. The jury did not find against any of the officers on the false arrest case arising from driving under the influence. The jury found Officer Plumb- Was the special verdict written in that way? Yes, Your Honor. And it's in the record. All the 16 claims presented to the jury were outlined per individual. So- Let me understand. There was a false arrest claim arising out of the stop? Yes, for driving, it was, he was arrested for also driving under the influence. And that's what precipitated all the other events that occurred. Right, but the premise for the false arrest was not the stop, but it was rather the arrest after the stop. Right, after when they- I mean, the stop itself is not an arrest. That's a detention. Correct, Your Honor. And I guess I should have explained a little bit better. What occurred factually, as Judge Shub tried to explain, or was aware of, given that he was the judge that oversaw the trial and the entire litigation the year prior to trial, was that Officer Brain initiated the stop. Conducted a breathalyzer and a field sobriety test that both came back, well, the breathalyzer negative, but Mr. Orr failed the field sobriety test. And then he explained that he had a stroke, that he was disabled, which was evident from his license plates that had the disabled sign on it. And he explained that he had had a stroke that limits his ability to balance himself. Nevertheless, he was still arrested, and that was a claim that plaintiffs brought. When they arrested him and took him to, that the arrest was based on this driving under the influence. When was he arrested, before the punch or after the punch? Well, that was, the arrest after the punch gave rise to the claims for false arrest for resisting, unlawful arrest for resisting arrest, those Fourth Amendment claims. So there were four false arrest claims that were presented to the jury. Two against each of the officers, when you say four? Correct. So two that led to the arrest for driving under the influence, two for resisting arrest. So those are the false arrest claims. And Judge Shub's order focuses on the fact, as all the other factors, that Officer Brain was the focus of this whole litigation. It wasn't Officer Plum in the sense that he was the primary target or basis of the claim. It was Officer Brain and his conduct. It was the, his initiating the stomp. Well, I mean, as I understand from reading some of the record, that Mr. Orr was driving kind of erratically, and that's what precipitated the stop. No, again, as Judge Shub explains, that the video shows that it wasn't, as the officers had described, the conduct that led to the arrest. That he was driving five miles under the speed limit. Wow. That he had swerved just barely into the next lane around Marconi Curve, which is known to be a pretty, pretty steep curve. And that, that was not the same manner in which the officers had described it to justify the stop. So, we're not talking about a, and this court also recognized that in its, in its remand order, that the facts were such that this was not a serious threat to the officers. You're talking about an elderly, disabled man who was pulled over for. Why, why did they have to punch him? Well, that's why Officer Plum was found liable, Your Honor, because the jury found that his use of force was unreasonable and came back with 125. And then they arrested him, took him into custody, and all that followed. Well, when they tried to take him to the station for further tests, in this case, blood work, to confirm that he was not. Let me ask you this. Why hasn't, why didn't you settle this case? Why, I mean, the amount of litigation over the punch is just amazing. I, I would agree with you, Your Honor, to the extent that if this case were just about the punch, that I would be asking the same question. But this case wasn't just about the punch. The punch was secondary to everything else, and this is why Judge Shub found that this was a limited success case. He got $125,000, right? Correct. But, Your Honor, this lawsuit was filed with over 20 claims against three defendants. 16 of them. And Judge Shub said all those claims were related. Correct. But just because they're related, that does not end the inquiry. As the Supreme Court in Hensley stated, we emphasize that the inquiry does not end with a finding that the plaintiff obtained significant relief. A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. And that's the situation we have here. 16 claims went to trial, on which Mr. Orr only prevailed on five. All those five claims, the excessive force, battery, the Bain Act, and the false arrest and the violation for unlawful arrest arising from his resisting arrest, all were premised on the same act, which was the punch. It's your position he didn't get a significant recovery here? Whether you view the $125,000, $125,000 as significant or not, as Hensley says, that's not the end of the inquiry. The inquiry is- So how does the district court get to a 45% reduction for limited success? What's the explanation that the district court- The explanation- For getting to the number. Correct. How did he select 45 as opposed to, say, 20? He got to 145, Your Honor, on these following facts. 145. 45. Well, it was 40, and then- Right, the adjustment for the- Well, we'll just say 45. Yes, I understand. There was a little step in there. That Mr. Orr recovered $125,000 compared to the $1.75 million that he requested at trial. That 16 claims were presented to the jury, of which he only recovered three. That this case was, the claims on which he recovered were not complex in the sense that it does not take a lot of consideration by a jury or deliberation to find an officer liable for punching an elderly, disabled man who's putting up very little resistance and is not a threat. On the fact that they did not recover any punitive damages on a case where the conduct was so egregious, he punched a 76-year-old man in the stomach that posed no threat to him. That all the claims from the beginning of the start of the litigation to through trial, the focus was on Officer Brain and his conduct. That Mr. Officer Brain was the heart of that litigation. And then the fact that had he not presented all these unsuccessful claims, resulted in a very lengthy and drawn out trial that otherwise would not have resulted. But most importantly, Your Honor, it was the fact that plaintiff's counsel expended more than 1,500 hours on this case. Almost a million dollars in attorney's fees to recover 125 on what Judge Shub recognized being the less complex claims. The case law, as I understand our case law, is we don't look for proportionality. I would, yes and no, Your Honor. Yes, in the sense that there is no numerical formula. In terms of, do we say one to five, one to three? No, the court has rejected a numerical formula. But it is proportional. It is proportional as recognized by McGowan. Interpreting the Supreme Court cases of Farrar City, Rivera versus City of Riverside, I believe. And I apologize if I mispronounce that, where it states that although the Supreme Court has disfavored a test of strict proportionality, it also suggested that a comparison of damages awarded to damages sought is required. And the McGowan court goes on to explain that the Supreme Court has clarified that in judging the plaintiff's level of success and reasonableness of hours spent achieving that success, a district court should give primary consideration to the amount of damages awarded as compared to the amount sought. So the courts have said, the Supreme Court said that while we don't have a strict formula for proportionality, we are going to give the most weight to the difference between what you asked for and what you recovered. And this is why this is a limited success case, despite whether one views the $125,000 as substantial relief or not. Plaintiff's counsel expended a lot of time and practice of the litigation since the beginning. I also just want to briefly touch upon your Honor's question regarding what was remanded. And in this case, it was for the court to justify or reconsider the lodestar reduction. And it was not unreasonable for Judge Shub to read this court's instructions in that limited matter and not consider the attorney's fees rate and all the other matters raised in the second fees motion after remand. Let me ask you this. On the first appeal, did they raise in their appellate briefs these issues about the rates and whatnot? Yes, Your Honor, they did. And if you read our mem dispo or the memorandum, does it resolve those issues? Yes and no. And I know that sounds like a contradiction, but it isn't. No, in that the court's- Court, usually when we resolve a sub-issue, a number of issues that are raised, we usually say affirmed in part, reversed in part, and remanded. We didn't do that here. The mem dispo on the end, at the end, says we therefore vacate an award and remand for recalculation. And that's why I said no, Your Honor. And it says, and then it says, on remand, the district court should reconsider or otherwise justify its lodestar reduction in light of this memorandum disposition. So we're telling the district judge, you can't consider the no public benefit theory. And then it affirmed part of, on the substantive claims, vacated, and we remanded. Well, to answer Your Honor's question, like I said, know in that the memorandum was silent as to any of these other issues concerning hourly rate and reasonable hours. But I say- And they were raised on appeal. Correct. And but I'm just saying that the memorandum itself was silent as to whether in that those issues were not specifically addressed in the memorandum. But I say yes in the sense that in order for this court to have reached the lodestar reduction, it, in the analysis of attorney's fees, one determines the lodestar rate first. So if the court had found some error in the manner in which Judge Shubb, logic follows that the court would have pointed that out as opposed to jumping straight to one of the other factors further down the attorney's fees analysis. And I'm at a time — oh, I'm sorry, I have 30 seconds. No, you're — you will last 30 seconds. I'm over it, okay. But if you'd like to sum up, that's all right. Actually, I just wanted to address one fine point regarding rates, if this court does consider that again, and opposing counsel's comment that Judge Shubb completely disregarded. That's incorrect. He had in front of him the two declarations that Mr. Orr's attorneys submitted of attorneys — I think it was Kurtz and — and — I'm sorry — Merrin and Mr. Katz. And Judge Shubb expressly stated why he found them useless, because none of them addressed what they would have charged in this type of case, such that Judge Shubb had no information in front of him as to what the reasonable rate was for that time period, and he properly looked at other cases, especially that of John Burris, who is a very well-known civil litigation attorney here in the Bay Area that does these types of police cases quite frequently, that his hourly rate during that time period was $400, such that there was factual basis for the rate that he provided. And again, Your Honor, this case is about limited success, regardless of how we look at the recovery actually obtained, as the Court mentioned in Hensley. Thank you. Roberts. Thank you. You've saved a little time. I'll try to run through these points fairly quickly. First of all, in terms of Judge Shubb's rationale for his reduction, he says expressly on remand that he's not taking — giving high consideration to the difference in damages. Instead, he's giving most consideration to the way to, A, his misremembrance that Mr. Orr did not recover for false arrest, for resisting arrest, and the way counsel conducted the trial. He expressly says he's not giving significant consideration to the difference. Second, the notion that this is all about Brame doesn't comport with the record. The jury found Plum liable, not Brame, liable for false arrest, liable for excessive force, and for all the damages that occurred after it. Mr. Plum tried to make the argument that it was Brame and not him in his Rule 50 motion, which Judge Shubb rejected, and then again in Orr won before this Court, and both rejected that argument. Third, the notion that this was just a simple case simply does not comport with the record, and again I submit was probably misremembered. Any look at this record shows that the defendant fought this case tooth and nail to justify the punch. They brought in experts. They brought — they had — they brought in all their standards. They did not concede that the punch was wrong. They fought tooth and nail, and they fought it again on appeal. So this was not a simple case. Maybe it should have been. Maybe it should have been. But — but plaintiff's counsel had no choice. They have to fight it. If the defendant wants to put up this kind of defense, they have to put up the time to rebut it. The Court also found that all of counsel's hours were reasonable. All the hours claimed were reasonable and were part of the load star. It didn't find they were unreasonable in reducing the load star. It found that they just didn't get as much money. On the rate issue, it's true the first time around Mr. Merrin didn't state what his rate is, but on remand, in the second order, he did. He corrected that. And we also submitted extensive other evidence of what 2018 rates were in Sacramento, which the judge completely ignored. And finally — and I know this — I don't want to sound presumptuous, but if the Court should find for us in reverse, we would ask the Court to send this matter to the appellate commissioner rather than back to Judge Shub for another — what might turn out to be another appeal. Well, Judge, the commissioner has our appellate fee motion from the first — That's for fees on fees, though, and this deals with, you know, work of the district court. Yes. And that has to go back to the district. But let me ask you — there's just one question. I alluded to the fact that the case hadn't settled. Is there any possibility that this fee dispute, which is now on the second appeal, could benefit from some work with the Court's mediators? We tried that, Your Honor. You tried it. Yeah. And the defense said we're too far apart, never made an offer. So that — we have no choice at that point. You know, I don't know about my — I'm sure my co-panelists would join in with me, but I would encourage the State — I mean, there should be some attempt to sit down and see if the matter could be resolved with the Court mediators. They're fantastic. Yes. We've had good experiences with them. They're fantastic. But as I said, in this case, the State declined to participate. Declined to participate in our Court's mediation? Yes. Yes. Is that — that's true? I'm sorry, Your Honor. I can't answer that. I — You just don't know? No. I just was assigned to this. You don't know. Okay. Okay. Well, if you go back and think about it, and you — if you go back and think about it and you think that's a good idea, let us know. I think it's a great idea. Well, let us know. That would make sense. Well, that's an improvement. Let us know. Okay. Thank you both very much. Thank you both for your arguments. Thank you. Orr v. Brame now submitted for decision, and that completes our argument for this morning. Now, we've got a lot of students here. After conference, we'll come back out and talk to you. In the meantime, you'll get much more interesting talk from our law clerks.
judges: W. Fletcher, Paez, Choe-Groves